And the next case before us is Otten v. BNSF Railway Company. May it please the court. My name is Steve Groves and I'm here for Tim Otten, who's the plaintiff in this case. Unlike other countries, we rely on juries to decide facts and lawsuits and not judges. And jury trials are enshrined as a fundamental right in the U.S. Constitution and the Wyoming Constitution. And there is a procedure under state courts and federal laws now for summary judgment, and it's well recognized. And under the law, summary judgment is only appropriate. The denial of the fundamental right to a jury trial is only appropriate when the facts are undisputed. And there could be no inferences from those facts that would support a case. And when it's a matter of the substantive law applicable in the case, those undisputed facts make it so that a jury doesn't need to decide anything. And in this particular case, the summary judgment that was granted was fundamentally wrong on a factual level, and it was fundamentally wrong on a substantive law level. On the factual level in this case, defendant repeatedly says to this court and repeatedly stated to the trial court and stated it vociferously, the plaintiff has admitted that the regulation in question that led to the finding of negligence per se, 392.10, and that was the only regulation the judge decided the case on. They repeatedly said, we agree that that regulation applies. We don't. We didn't. Well, you never argued that it didn't apply. Well, Your Honor, when a trial court is deciding the summary judgment case, they have to get the law right and the facts right. And they have to determine that under the facts present, we did not ever admit, Judge, that in fact, this regulation does apply. You never denied it. Well, Your Honor, what we certainly did... No, I don't believe you denied it. You acknowledged that was the regulation. We acknowledged there was a regulation that said what it said. We did say that's what the regulation says, but... And you never, in your opposition to the summary judgment, you never said, we deny fact X. Well, Your Honor, we never admitted that he was hauling hazardous materials. And if you look at their brief... But you never raised before the district court in a manner that the district court should have ruled on it, that this regulation was inapplicable. And you never argued plain error here. Your Honor, we certainly believe that there was plain error in this case. To the extent, we believe that there would be plain error would be appropriate as a forfeit and not as a waiver. Doesn't the local rule and the civil rules of procedure require a person opposing facts set forth in a motion for summary judgment to specifically admit or deny the particular fact in question? Yes, and they never once said, if you look at their facts, Judge, they did not say that this was a... You never once said... Placarded hazardous... We deny this is applicable. I'm sorry, Your Honor. They never said that it was a placarded hazardous material. We did deny the... If they argued that it was negligence per se because of the violation of this specific regulation and not once did you say, can't be negligence per se because this regulation doesn't even apply to us? Your Honor, that certainly would have been preferable. I agree. I'm not... If we think it's waived, if we think you didn't make this argument, do you lose? Well, Judge, I think if you all believe that we completely waived it and it's not forfeited, then the Tenth Circuit law is pretty clear. We do believe, Judge, that this particular case, certainly it was not intentional. We did not do it intentionally, you know, to waive it. We believe it would be, at best, a neglect where it's forfeited and under that, the judge was wrong and they were wrong. Did you argue plain error in your opening brief to us? Your Honor, I don't know that we did. I know we discussed it... I know you did not. Yes. I was... We did discuss it in our reply brief, obviously. And, Your Honor, we were faced with answering what they put forth in their statement of facts. And, for instance, they put forth that a man named Hedger who testified, they said that Hedger said that our client had violated the regulation. Well, Your Honor, they didn't attach the Hedger's deposition to the summary judgment. The court didn't have those facts in front of it. They didn't. You can look in the record for Hedger's deposition in the appendix. It's not in there. And they said that Hedger concluded that our client violated the regulation. Okay, well, Hedger wasn't... That's a legal conclusion. He wasn't qualified to do it. And, Your Honor, we believe that in this particular case... What you argued to the district court is that it was impossible to comply... We did. ...with the regulation because you couldn't square up to the crossing. I mean, I'm the district court judge. I'm not hearing anybody saying this regulation doesn't apply. I'm hearing you say, yeah, it applies, but it was impossible for us to comply. Yes, Your Honor. If, in fact, Your Honor, it did apply, it was our position that it was impossible to comply. Yes, Your Honor. Well, you didn't argue if, in fact, it does apply. And, Your Honor, we still would hope that a trial court would get it right, and we don't believe that it did get it right. And I appreciate what you all are saying. I really do. Well, is that your... I mean, that's your only argument here today, that the regulation didn't apply? Well, no, Your Honor. I also believe that under Wyoming law, quite clearly, negligence per se is different, completely different under Oklahoma law. That's the substantive legal issue. Under Oklahoma law, there's clear cases that say if you violate the Oklahoma statute, state court cases, if you violate that statute for stop, look, and listen on a public crossing, that is negligence per se. No doubt. And in applying that in the Molenski case, the Tenth Circuit held that that would be negligence per se. Wyoming law is much different. Isn't it discretionary with the district court how to handle that situation under Wyoming law? It is, Your Honor. It is discretionary as to whether they apply it as a pure negligence per se, as that is typically understood, which would mean the violation would be negligence in and of itself. And here he applied it as a pure negligence per se. He did, Your Honor, yes. And you say he abused his discretion doing that? I believe he did, Judge. But saying that aside, under Wyoming law, if it is foreseeable that the plaintiff might, in fact, violate the regulation, if that's foreseeable or the statute, then that means there can be more than one proximate cause. And in this particular case, the question of foreseeability is quite clear, Your Honor. The railroad owns that property. This is a private crossing, not a public crossing. It's in essentially a yard. There's three mainline tracks, and then there's separate tracks going this way, going other directions. The railroad constructed those gray crossings where they wanted them, Your Honor. The railroad knew that the reason for those crossings was so vehicles could cross them. The railroad knew because they'd asked this company to come out and get the oil. The railroad knew that he was going to be coming out there. It was the railroad's train. They knew when the train was going to be there. The railroad previously had provided plaintiff with someone to take him through there who had a radio. Well, now, they told him before he came on this trip that there would not be a guard there, a flag man. Well, I think there's testimony that they say they did. I don't know that that's admitted. It's undisputed. I don't believe it is. I believe that, you know, but Your Honor, whether they told him there would be a flag man or not, they had an obligation. We believe, given the geometry in the area, given the closeness of the tracks, when you're driving a truck like that, Your Honor, we believe that it's foreseeable. And if you think about it this way, why did the Federal Motor Carrier Safety Administration go to all the trouble of enacting this regulation, of having a rulemaking process, of calling the people to testify? They did it because it's 100 percent foreseeable that vehicles might not see a train and might pull out onto the tracks. That's why we have a rule. Well, that's why you have the rule to roll your windows down, turn your radio off, and look. And in this particular case. He didn't do any of those. He drove right across. He did, Your Honor. You're correct. And I believe that it would not have been possible for him to get in a position, given the closeness of both tracks, because you have mainline, mainline, mainline, and another track coming off. Under the evidence in this case, we believe that a jury could conclude that, in fact, you couldn't get the vehicle in a position where it could square up. Well, there's nothing in the regulation that requires the vehicle to square up. You keep arguing that, and I can't find it anywhere. The reason that's important, Judge, is, and that's a very good question, because people don't understand, a lot of folks don't, at railroad tracks, if you're at an angle and the track is here, it is very difficult, in fact, it would be impossible in a truck like his because behind you is, you don't have proper, there's not a windshield. You can't see it. You get squared up, you can see it. If you're at an angle, you can't. He could turn his head. I mean, this was not, I mean, I've watched the video numerous times, and, you know, he did not make any attempt. He did not slow down. He didn't stop. He didn't look. He didn't listen. And he plowed right in front of a moving train. And that's exactly why, Judge, we have at grade crossings with bad angles like this, because it's a very bad angle on the approach. Well, you can have the perfect angle, and if the person doesn't look, it's not going to help them. He couldn't see, Judge. Look at the video, Your Honor. I have watched it repeatedly. I believe you, Judge. I would ask that you look at it. See if you can see his face in the video. See if you can see him through the, you can't. Because when you sit in that truck, you can't, he couldn't see. The train blew its whistle three times. If he had his radio off and his window down, even if he couldn't see it, he could hear it. Your Honor, it was an extraordinarily windy day. His truck is very loud. And more importantly, Judge, this is a private crossing. They did not blow the whistle in the standard crossing pattern for a train is coming, which is two longs, a short, and a long. They did blow it, but it was not a sufficient time for him to have heard it and do something, and it wasn't in the pattern that is required to be blown at grade crossings. Your Honor, we believe it was impossible, and I understand. I appreciate the court's, obviously, review of the briefs. We believe that the case should be reversed and remanded for a jury trial. And unless there's any further questions, I would reserve my final time. Thank you. Thank you. Good morning, and may it please the court. My name is James Roberts. I represent the railroads in this case. The district court properly held the plaintiff was negligent, per se, because he violated three fundamental duties. Well, first of all, the regulation does not apply, does it? Or there certainly isn't enough evidence in the record to conclude that it applies. Well, I believe on that score, if you read through, it's talking about not necessarily the material in the tanker, but there are two subsections, four and six. But the waste oil and used oil isn't a hazardous substance anyway. Correct. That's correct. But if you read the statute, it talks about empty or full. Yeah, empty or full of waste oil, which isn't a hazardous substance. Well, we also have testimony that plaintiff hauled mine blasting fuel. Is there evidence in this record from which you could conclude as a matter of law that this regulation applies? I believe there is. I believe the better argument, as you've identified, is waiver. On that score, at the very outset of this case and all through summary judgment, argument, pleadings up here, or pleadings at the district court, the court was never afforded the opportunity to evaluate whether or not this applied or not. Wyoming is not a big fan of negligence per se. Would you agree with me on that? I would. But I would also argue to you that it may exercise its discretion to find that a specific regulatory construct applies. To that end, the Wyoming Supreme Court has adopted section 286 of the restatement and ran through those factors in its rule. I believe with something that is inherently obvious as stop, look, and listen, that's a standard for all members of the community, and that doesn't require a jury. Children, when they get their first bicycle, are taught stop, look, and listen. Motorists, professionals, truck drivers. Counsel, does it matter that it is fundamental? Well, I mean, I thought you were relying on the fact that, well, I think the policy council admits here that the person didn't stop. True. Do we care if it's a well-known principle? No, ma'am. Okay, then. Why are you arguing it? That's what I'm wondering. She had asked me a question that the state of Wyoming is not a big fan of per se. In this instance, you raise a valid point. There are no disputed facts. We know why this accident happened. Any of these theories or allegations about the railroad are cut off by the plaintiff's own conduct. Would that be true even under a simple negligence standard? I would argue it would be. As the court has pointed out, rather than coming here and arguing no applicability of the statute, plaintiffs came and said, yeah, there's a statute, but it's impossible to comply with. Well, does that raise a comparative negligence issue that should have gone to the jury? Not given the conduct here and the fact that it's the intervening cause of this accident. There's no cited authority in the briefs on appeal that the intervening cause theory is no longer viable in the state of Wyoming. The court efficiently analyzed both proximate cause and intervening cause and ruled out any other basis or reason for why this occurred. And that's not unique in grade crossing accidents, particularly where you have video of the incident. He had 20 to 30 seconds with the train behind him. Never looked. Never rolled down his windows. We see it on the video. Well, according to the opposing counsel, he couldn't see it even if he had tried to look because of the angle of the crossing. Well, then it's incumbent on him to get in a position he admitted he could get into with a three-point turn so that he could see it. His supervisor testified, I've run that route several times and I'm able to see it. And he had been there previously when it negotiated. Is that a question of fact? No, those are uncontroverted facts. And to have no testimony that shows that somehow he was incapable of stopping, incapable of ensuring his safety, incapable of looking. I did have a comment, though, on the factual issue on the horn. The private grade crossing, this engineer or conductor was blowing that cadence once he realized, oh my, this person isn't going to stop. Those were emergency blasts to try to notify this person of a huge orange locomotive coming down the track. The other thing that I think is not only undisputed but is important to note in this case, a professional truck driver, he's in an environment solely devoted to the movement of rail traffic. How are you not alert? How are you not paying attention? Those sort of issues ought not go to a jury. Do you have any further questions that I can address? It appears not. Okay. I'll waive the remainder of my time and rely on the briefing. Thank you. Thank you. At some level, what we're trying to do in all cases is get to the truth. And I certainly understand the court's feelings about not raising the issue directly with the trial court and saying this doesn't apply, period. But it doesn't. He just admitted it. And under Wyoming law, as your honors, I think, understand, Wyoming favors, unlike Oklahoma, jury trials. It doesn't really care so much for negligence, per se, preventing a plaintiff from having his day in court. And that's all we want. And a jury could find all the things you've discussed and the things they talked about, and they could say a plaintiff was negligent. They may well do that. But under Wyoming substantive law, that's for the jury to do. And we respectfully request that the court reverse and remand for a jury trial. And we'll waive the rest of our time. Thank you. Thank you.